# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Steven Heath, | Civ. No. 08-6055 (JRT/JJG) |
|       Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Travelers Companies, Inc., | |
|       Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendant's Amended Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (Doc. No. 9). Daniel S. Le, Esq., Dan Le & Associates, 333 Washington Avenue North, Suite 202, Minneapolis, Minnesota 55401, appeared for Plaintiff Steven Heath. Andrew J. Voss, Esq., Littler Mendelson, PC, 80 South Eighth Street, Suite 1300, Minneapolis, Minnesota 55402, appeared for Defendant Travelers Companies, Inc.

The Honorable John R. Tunheim, United States District Judge, referred the motion to this Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) in an order of reference dated March 15, 2009 (Doc. No. 26). For the reasons set forth below, the Court recommends that the motion be granted insofar as it seeks to compel arbitration and stay these proceedings.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Steven Heath ("Plaintiff") was employed by Defendant Travelers Companies, Inc. ("Defendant") until his discharge in January 2008. Plaintiff had previously worked for a predecessor company, The St. Paul Companies, Inc., which merged with Travelers Property

Casualty Corporation ("Travelers") in 2004 to become The St. Paul Travelers Companies, Inc. ("St. Paul Travelers"). (Bengston Decl. ¶ 2, Jan. 29, 2009.)

### A.  The Arbitration Policy

After the merger, St. Paul Travelers decided to extend Travelers' Employment Arbitration Policy ("Arbitration Policy") to all St. Paul Travelers employees. (*Id.* ¶ 3.) On April 1, 2005, Defendant's Vice President of Human Resources sent an email to all employees, including Plaintiff, informing them that St. Paul Travelers would be adopting a binding arbitration process. (*Id.* ¶ 3 & Ex. 1.) The email included a hyperlink to the Arbitration Policy so that employees could review it and ask questions. (*Id.* ¶ 5 & Ex. 1.) The email explained that arbitration was an essential element of and a condition to employment. (*Id.*)

On December 31, 2007, Defendant sent an email to its employees, including Plaintiff, informing them of updates to the Arbitration Policy. (*Id.* ¶ 6 & Ex. 2.) Employees were required to review the updated policy and acknowledge they had read, understood, and agreed to abide by the updated policy by clicking on a hyperlink in the email. (*Id.* ¶ 7 & Ex. 2.) In accordance with these instructions, Plaintiff acknowledged and accepted the updated Arbitration Policy on January 4, 2008. (*Id.* ¶ 8 & Ex. 4.)

### B.  The Code of Business Conduct

Since 2007, Defendant's Code of Business Conduct ("Code") has expressly referred to and incorporated the Arbitration Policy. (Bernstein Decl. ¶ 3, Jan. 28, 2009.) The Code requires employees to agree to and comply with the Arbitration Policy as a condition of continued employment. (*Id.* ¶ 3 & Ex. 1 at 4, 12.)

The Code establishes certain "key obligations" for employees, including compliance with the Arbitration Policy. (*Id.* ¶ 4 & Ex. 1 at 4.) The Code also provides that an employee's

certification of the Code means that the employee has read, understands, and agrees to the Arbitration Policy.  (*Id.* ¶ 5 & Ex. 1 at 4.)  The Code requires certification yearly as a condition of continued employment.  (*Id.* ¶ 7 & Ex. 1 at 4.)

Most recently, Plaintiff certified his understanding and agreement to the Code on July 12, 2007, via an online training compliance program administered by an outside vendor.  (*Id.* ¶¶ 7, 12 & Ex. 3.)  To begin the training program, an employee clicks on a hyperlink provided in an email.  (*Id.* ¶ 9.)  The course includes information about the Code and instructs employees how the Code would apply in hypothetical situations.  (*Id.*)  The Code itself is also available for viewing throughout the course.  (*Id.*)  After the employee passes an online test, the employee must read the Code, if he or she has not done so previously, and then proceeds to the certification portion of the course.  (*Id.*)  The employee is required to certify that he or she has read, understands, and agrees to comply with the Code, by clicking a designated key.  (*Id.* ¶ 10 & Ex. 2.)

### C.     Plaintiff's Discharge and the Resulting Lawsuit

In November 2007, Plaintiff was issued a "First and Final Warning" for repeatedly confronting other employees in an aggressive manner.  (Compl. Ex. 1.)  He was fired on January 23, 2008, for reasons not appearing in the record.  Defendant contends the discharge was for misconduct; Plaintiff asserts it was due to disability discrimination.[1]

Plaintiff brought suit in November 2008, alleging Defendant improperly terminated his employment in violation of the Minnesota Human Rights Act and the Americans with Disabilities Act ("ADA"). Defendant filed an Answer to the Complaint on November 24, 2008. Approximately a month later, Defendant filed a motion to dismiss, followed by an amended

---

[1]     Plaintiff alleges in his Complaint that he suffers from depression and bi-polar disorder, but there is no evidentiary support for this assertion in the record.

motion to dismiss on January 29, 2009. The amended motion seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), (3), or (6), or in the alternative, a stay and compelled arbitration pursuant to the Federal Arbitration Act ("FAA").

## II. DISCUSSION

### A. Federal Rule of Civil Procedure 12

As a motion brought under Rule 12, Defendant's motion faces several procedural obstacles. First and foremost is Rule 12's requirement that a party must bring a motion to dismiss under Rule 12(b)(1), (3), or (6) *before* filing a responsive pleading. *See* Fed. R. Civ. P. 12(b). Defendant has answered the Complaint, and its request for dismissal under Rule 12(b) is therefore untimely.

In seeking dismissal under Rule 12(b)(1), however, Defendant has called into question the Court's subject matter jurisdiction, and a court may assess its jurisdiction at any time. *See* Fed. R. Civ. P. 12(h)(3). Here, Plaintiff has brought an ADA claim over which the Court has federal subject matter jurisdiction under 28 U.S.C. § 1331. Because this Court has jurisdiction over Plaintiff's substantive ADA claim, it has jurisdiction to address Defendant's request to compel arbitration. *See Vaden v. Discover Bank*, 129 S. Ct. 1262, 1268 (2009).

Finally, in support of its motion to dismiss, Defendant submitted matters outside the pleadings, such as the Arbitration Policy, which the Complaint neither mentions nor attaches, and which the Court must consider in resolving the motion. This forecloses the possibility of dismissal under Rule 12(b)(6) unless the Court converts the motion to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). The Court opts not to convert the motion, however, because Defendant has made a perfectly acceptable alternate request for relief: to

compel arbitration and stay the case under the FAA. In this procedural context, the Court is free to consider materials beyond the pleadings.

    **B.**    **The FAA**

The purpose of the FAA is to promote judicial recognition of arbitration agreements and give those agreements the same credence as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citations omitted). To facilitate this purpose, the FAA permits a court to stay a case and compel the parties to arbitrate.

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Before compelling arbitration under the FAA, a court must determine (1) whether the parties entered into a valid agreement to arbitrate and (2) whether the disputed issue is within the scope of the agreement. *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694-95 (8th Cir. 1994) (citation omitted).

An unambiguous arbitration clause is presumed to be valid and enforceable. *See Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). If there are any doubts regarding whether claims raised in litigation are subject to an arbitration clause, those doubts are resolved liberally in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Plaintiff challenges the validity of the Arbitration Policy on several fronts. He claims there was no mutual assent to arbitrate, that no consideration was given for the mid-employment adoption of the agreement, and that the Arbitration Policy was unconscionable, a contract of adhesion, and against EEOC policy.

### 1.   Mutual Assent

Plaintiff contests his assent to the implementation of the Arbitration Policy. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). A person's assent to an agreement is determined by his or her objective conduct. *Seibert v. Amateur Athletic Union of the U.S., Inc.*, 422 F. Supp. 2d 1033, 1039 (D. Minn. 2006) (Rosenbaum, J.) (citing *Cedarstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 221 (Minn. 1962)). Even if a person does not personally sign an agreement, he or she may be bound to it according to contract and agency principles. *Id.* (quotation omitted). For example, clicking a hyperlink can constitute valid assent to a contract, including an agreement to arbitrate. *Id.* at 1039-40 (citations omitted). An individual's failure to read or understand a contract before signing it does not invalidate assent. *Id.* at 1039 (quotation omitted).

Here, Plaintiff assented to the Arbitration Policy several times. Most recently, on January 4, 2008, he clicked an emailed hyperlink to indicate that he had read, understood, and agreed to be bound by the Arbitration Policy. This conduct was sufficient to manifest his assent to be bound by the Arbitration Policy. Previously, in July 2007, Plaintiff had certified his understanding of and agreement to the Code, which expressly referred to and incorporated the Arbitration Policy. Completion of the certification process signified that Plaintiff had read,

understood, and agreed to the Arbitration Policy. His failure to actually read the Arbitration Policy did not vitiate his affirmative manifestation of assent.

### 2. Consideration

Plaintiff next claims that no consideration was given for the implementation of the Arbitration Policy in April 2005 because he was not guaranteed continued employment. He relies on language in the Arbitration Policy's Statement of Intent, which stated that employees would retain only an at-will employment relationship with Defendant.

> This Policy does not constitute a guarantee that your employment will continue for any specified period of time or end only under certain conditions. Employment with the Company is a voluntary relationship for no definite period of time . . . . This Policy does not constitute, nor should it be construed to constitute, a waiver by the Company or an employee of their respective rights under the "employment-at-will" doctrine . . . .

(Bengston Decl. Ex. 3 at 1.)

Plaintiff has provided no legal authority suggesting that an employer must change the at-will relationship, or must guarantee a definite period of employment, in order to provide sufficient consideration for a mid-employment adoption of an arbitration policy. Rather, when an employer unilaterally offers a change in the terms of employment and informs the employee of the proposed change, "[t]he employee's retention of employment constitutes acceptance of the offer . . .; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer." *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983); *see also Lang v. Burlington N. R.R. Co.*, 835 F. Supp. 1104, 1106 (D. Minn. 1993) (where the defendant employer adopted an arbitration policy twenty years after the plaintiff's employment began, finding sufficient consideration for the changed term of employment due to the plaintiff's retention of employment).

In the present case, Defendant first informed Plaintiff of the Arbitration Policy in 2005, and Plaintiff continued his employment. Indeed, Plaintiff retained his employment each time he certified his understanding of the Code or agreed to an updated Arbitration Policy. This provided sufficient consideration for his agreement to be bound to arbitrate.

### 3. Unconscionability

Plaintiff next avers that the Arbitration Policy is unconscionable because the online certification process did not mention the Arbitration Policy and because Defendant did not obtain his actual signature. Plaintiff also contends he was deprived of any opportunity to bargain or question the Arbitration Policy's effects on his rights due to a mental disability.

"A contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *In re Estate of Hoffbeck*, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987) (quoting *Hume v. United States*, 132 U.S. 406, 411 (1889)). The three specific arguments raised by Plaintiff under the rubric of unconscionability simply miss the mark.

It is immaterial whether the online certification course specifically referred to the Arbitration Policy because Plaintiff received an emailed notice of the original Arbitration Policy on April 1, 2005, and an emailed notice of the updated Arbitration Policy on December 31, 2007. Both emails contained hyperlinks to the actual policies for employees to review, and both emails indicated that agreeing to arbitration was an essential element of and a condition to employment. The 2007 email required Plaintiff to agree to the updated Arbitration Policy by clicking on an embedded hyperlink. There is nothing unconscionable about this process.

The lack of an actual signature is also of no consequence. In today's electronic age, the click of a mouse can legally suffice as an indication of assent, *see Seibert*, 422 F. Supp. 2d at 1039-40, and Plaintiff clicked his assent to the updated Arbitration Policy on January 4, 2008.

Finally, although Plaintiff claims a mental disability precluded him from understanding and agreeing to the Arbitration Policy, he has presented no evidence of any such disability. There is simply no factual basis to conclude that the contract was unconscionable because Plaintiff lacked the competence to enter into it.

### 4. Adhesion

Plaintiff contends that the Arbitration Policy was an unenforceable adhesion contract because employees were not given a choice whether to accept it and because Defendant had superior bargaining power. A contract of adhesion "is drafted unilaterally by a business enterprise and forced upon an unwilling or unknowing public for services that cannot readily be obtained elsewhere." *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 924 (Minn. 1982). It "is imposed on the public for *necessary* service on a 'take it or leave it' basis." *Id.* at 924 (emphasis in original). To prevail, Plaintiff must show "that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation[,] *and* that the services could not be obtained elsewhere." *Id.* at 924-25 (emphasis in original and citations omitted).

Here, it is true that Defendant unilaterally drafted the Arbitration Policy and enjoyed superior bargaining power. On the other hand, Plaintiff has not shown that his employment with Defendant was a necessary public service, that he could not find employment elsewhere, that he did not have ample time to review the policy, or that he attempted to negotiate the terms of the Arbitration Policy. The Eighth Circuit has concluded under similar facts that an agreement to arbitrate is not an unenforceable contract of adhesion. *See Baker v. Sci. Apps. Int'l Corp.*, 273 F.

App'x 577, 579 (8th Cir. 2008) (unpublished). Accordingly, the Arbitration Policy in this case was not an unenforceable adhesion contract.

### 5. The EEOC's Policy Statement

Plaintiff cites to a policy statement issued by the EEOC in 1997, in which the EEOC proclaimed that courts should not enforce agreements requiring employees to arbitrate Title VII claims. *See* EEOC Notice No. 915.002, Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes as a Condition of Employment (July 10, 1997) (Pl.'s Reply Ex. A). It is well established, however, that the FAA governs agreements to arbitrate Title VII claims. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109-10, 119 (2001); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 837-38 (8th Cir. 1997). The policy statement is no bar to the authority of the FAA.

## III. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Amended Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (Doc. No. 9) be **GRANTED** as to a stay of proceedings and compelled arbitration and **DENIED** as to dismissal.

Dated this 18th day of May, 2009.

                                                  s/ *Jeanne J. Graham*
                                                  JEANNE J. GRAHAM
                                                  United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **June 2, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses

shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or the district judge directs otherwise.